730 P.2d 854

Carl Frank BACH and Ila Bach, husband and wife, Plaintiffs-Appellants,

v.

STATE of Arizona, Defendant-Appellee.

No. 1 CA–CIV 7761.

Court of Appeals of Arizona, Division 1, Department B.

May 8, 1986.

Review Denied Jan. 8, 1987.

**146**

Hunt, Stanley, Hossler & Rourke, Ltd. by H. Berkeley Rourke, Parker and Anderson, Parkinson, Weinberg & Miller by James W. Parkinson and Douglas P. Miller, Indio, Cal., for plaintiffs-appellants.

Jones, Skelton & Hochuli by William R. Jones, Jr. and Michael W. Foster, Phoenix, for defendant-appellee.

MEYERSON, Judge.

Plaintiffs-appellants Carl and Ila Bach brought this action to recover for injuries sustained by Mr. Bach in a single vehicle accident on Highway U.S. 60. The Bachs allege that defendant-appellee State of Arizona negligently designed and maintained the highway at the accident site. The State moved for a directed verdict at the close of the plaintiffs' case, claiming there was no breach of duty owed to Mr. Bach, and that its duty did not extend to the area off of the paved roadway where the accident occurred. The trial court granted the State's motion on the ground that the State owes no duty to the traveling motorist who, through no fault of the State, leaves the paved portion of the highway.

## I. FACTS

The facts are not in dispute. On July 18, 1980, Carl Bach was driving a U-Haul truck west on U.S. 60, bound for Vista, California. Bach was the sole occupant of the vehicle. The highway had a thirteen-foot wide westbound lane and an eight-foot wide paved shoulder. The paved shoulder was divided from the westbound lane by a white line. The Bachs had driven from Vista through the night of July 16, arriving in Prescott, Arizona, at 7:00 a.m. on July 17. Carl Bach slept from 8:00 a.m. until noon that day, a few hours before and after dinner, and from 11:30 p.m. until 5:00 a.m. the day of the accident. He began the return trip to California shortly after 5:00 a.m. Sometime later, Bach fell asleep at the wheel.

The truck went off the road and collided with the headwall of an unguarded box culvert located approximately 3½ feet off the paved shoulder. The concrete headwall was a foot thick and rose six inches above the level of the pavement. There was a five to six foot vertical drop from the top of the headwall to the rocks below. The truck hit the headwall, went over the edge and collided with the concrete wingwall, falling approximately five feet to the bottom of the ditch. The fuel tank exploded upon impact. Bach was severely injured in the ensuing fire. A highway patrolman who investigated the collision testified that the roadway was clear, dry, and in good repair at the time of the accident. However, Bach produced expert testimony which indicated that the State was negligent in designing the highway by placing the exposed culvert so close to the road.

The single issue on appeal is whether the State's duty to keep its roads reasonably safe for travel extends further than the paved surface of the highway. In other words, does the State have a duty to protect the public from hazardous conditions which exist beyond the pavement? As

more fully explained herein, we hold that there is such a duty and reverse the trial court's ruling.

## II. DUTY

The issue of duty is resolved by the court as a matter of law. *Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 356, 706 P.2d 364, 366 (1985). Duty is a matter of " 'the relation between individuals which imposes upon one a legal obligation for the benefit of the other.' " *Id.* at 355, 706 P.2d at 367 (quoting W. Prosser & W. Keeton, *The Law of Torts* § 53 at 356 (5th ed. 1984)). The issue therefore becomes whether the State, as builder and designer of U.S. 60, is under a legal obligation to take reasonable precautions for the safety of travelers who deviate from the paved roadway.

If there is a duty, then the specific conduct of a defendant is examined to see if there was a breach of that duty. Specific conduct is measured against the applicable standard of care. The standard in negligence cases is usually "reasonable care under the circumstances." What is reasonable on the one hand and negligent on the other will depend upon the particular facts of the case. The general rule is that "where reasonable people could differ as to whether the danger of some injury is foreseeable, the question of negligence is one of fact for a jury to decide." *Markowitz, Id.* at 357–58, 706 P.2d at 369–70.

█ There is a relationship between the State and a traveler using a public highway which imposes a legal obligation upon the State for that person's safety. More specifically, the State has a duty to keep its highways reasonably safe for travel. *Beach v. City of Phoenix,* 136 Ariz. 601, 667 P.2d 1316 (1983). That duty includes the duty to place proper barriers, railings, guards and/or warning signs at dangerous places on a highway when necessary for travelers' safety. *City of Phoenix v. Mayfield,* 41 Ariz. 537, 20 P.2d 296 (1933);

*Koehler v. State,* 263 N.W.2d 760 (Iowa 1978); *Estate of Klaus v. Michigan State Highway Dept.,* 90 Mich.App. 277, 282 N.W.2d 805 (1979); *Simmons v. Cowlitz County,* 12 Wash.2d 84, 120 P.2d 479 (1941); *see generally Annot.,* 19 A.L.R.4th 532 (1983).

In *City of Phoenix v. Mayfield,* the improved portion of a street dead-ended at an unguarded canal embankment. The plaintiff's vehicle drove into the open canal. The Arizona Supreme Court held that " 'it is the duty of a municipal corporation to erect railings or barriers along the highway at places where they are necessary to make the highway safe and convenient for travelers in the use of ordinary care.' " * 41 Ariz. at 548, 20 P.2d at 300 (quoting *Johnson v. State,* 186 App.Div. 389, 391, 173 N.Y.Supp. 701, 703 (1919)).

In *McKenna v. Volkswagenwerk Aktiengesellschaft,* 57 Hawaii 460, 558 P.2d 1018 (1977), the Hawaii Supreme Court reversed a directed verdict in favor of a defendant who maintained the highway where the accident occurred. The motorist deviated from his lane on a divided highway and collided with a vehicle on the opposite side. There were ruts and holes along the road shoulder at the accident site. The court held that the intoxication of the driver and the speed at which the vehicle was driven were questions for the jury. "Merely that the ... car may have been negligently driven was not enough to insulate the City from liability, if the City should have foreseen that a car might be negligently driven so as to create, in combination with the City's negligence, the hazard which resulted." *Id.* at 466, 558 P.2d at 1023.

Similarly, in *Rue v. State Dept. of Highways,* 372 So.2d 1197 (La.1979), a motorist who inadvertently drove onto the highway shoulder and lost control of her vehicle was not barred from recovery by her negligence in leaving the paved surface.

---

* We do not read *Mayfield* to preclude the protection of negligent persons traveling near dangerous points in the highway. Our analysis, however, necessarily expands the holding in *May-* *field* to include not only the traveler using ordinary care, but also the negligent or inadvertent one.

A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. Conversely, the Highway Department's duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on ... the shoulder.

*Id.* at 1199. *See also Michalak v. County of LaSalle,* 121 Ill.App.3d 574, 77 Ill.Dec. 35, 459 N.E.2d 1131 (1984). In *Thorbjohnson v. Rockland-Rockport Lime Co.,* 309 A.2d 240 (Me.1973), a vehicle skidded off the highway and plunged over a 90–foot cliff located 8½ feet from the paved surface. A guardrail in place was insufficient to prevent the accident. The court, in reversing a directed verdict for the city-defendant, held that inadvertent and intentional deviations from the highway were reasonably foreseeable. *Id.* at 246.

Several New York courts have dealt with accidents involving culverts adjacent to highways. In *Terwilliger v. State,* 96 A.D.2d 688, 466 N.Y.S.2d 792 (1983), the headwall of a culvert located four feet from the pavement was found as a matter of law to be the proximate cause of the accident and resulting injuries. The inadvertence of the driver in leaving the roadway did not preclude recovery. *See also Skiff v. State,* 125 Misc.2d 791, 479 N.Y. S.2d 946 (N.Y.Ct.Cl.1984); *Pontello v. County of Onondaga,* 94 A.D.2d 427, 464 N.Y.S.2d 891 (1983). In *Bottalico v. State,* 59 N.Y.2d 302, 464 N.Y.S.2d 707, 451 N.E.2d 454 (1983), the court explained that "[n]o meaningful legal distinction can be made between a traveler who uses a shoulder with justification and one who uses it negligently insofar as how such conduct relates to whom a duty is owed to maintain the shoulder." *Id.* at 307, 464 N.Y.S.2d at 708, 451 N.E.2d at 455. The court held that it is foreseeable that, once provided, an unpaved shoulder will be driven upon:

Although constructed for limited purposes, the very existence of the shoulder alters a driver's sense of safety and of the caution needed when traveling along the roadway. The driver may have no reason to expect that moving from the roadway to the shoulder might expose him or her to a grave risk of danger.

*Id.,* 464 N.Y.S.2d at 708, 451 N.E.2d at 455. Thus, the existence of a duty by the State cannot hinge upon the conduct of the traveler in leaving the highway. Once a duty is established, the foreseeability of the harm governs the scope of that duty. If it is foreseeable that a traveler will leave the paved surface, his conduct in doing so is relevant to the issue of the driver's contributory negligence. It is not relevant to the initial question of whether a duty exists.

■ The foregoing authorities are consistent with the general rule that "[i]t is not necessary that the exact manner in which the accident occurred could not have been foreseen if the injured person is within the foreseeable range of the negligent conduct and the injury results from a recognizable risk." *Schnyder v. Empire Metals, Inc.,* 136 Ariz. 428, 430, 666 P.2d 528, 530 (App.1983). The state's duty to maintain a safe highway encompasses the foreseeable risk that for any number of reasons, including negligence or inadvertence, a traveler might deviate from the paved surface onto the adjacent shoulder. Accordingly, we hold that the state's duty to maintain safe highways extends to those areas adjacent to the paved roadway where a vehicle might reasonably be expected to travel. As a matter of law, the box culvert in this case was located in such an area.

For these same reasons, we reject the State's contention that the statutory definitions for roadway, A.R.S. § 28–602(17) (Supp.1985), and highway, A.R.S. § 28–1801(5), govern the issues in this case. We do not agree that the duty issue hinges on the statutory definitions for roadway and highway. As the above cases suggest, where a highway literally begins and ends does not limit or define the state's duty to protect the public from hazards adjacent to the road.

## III. COBURN V. CITY OF TUCSON

The State argues that *Coburn v. City of Tucson,* 143 Ariz. 50, 691 P.2d 1078 (1984) disposes of the issues on appeal. In *Coburn,* the supreme court held as a matter of law that the city was not negligent in failing to remove a tree which obscured a driver's view of a child riding his bicycle on the wrong side of the street who failed to stop at a stop sign. There, it was possible for the court to say as a matter of law that the city was not negligent. In reaching that conclusion, the court found that the city owed a duty to the plaintiff. It also, however, found that the city had not breached its duty—there was no genuine issue of fact on the issue of whether the city's conduct fell below the standard of care.

 The State argues that *Coburn* is controlling because there the court held as a matter of law there was no evidence of negligence. Here, the State argues that it is undisputed that Bach's injuries were caused solely by his falling asleep. It is true that the accident occurred after Bach fell asleep and his vehicle strayed off the road, striking the culvert. But it is also true that a jury could find that Bach's injuries were caused by the collision of the vehicle with a negligently exposed and unprotected culvert. We see no similarity with *Coburn* in this respect.

 Next, the State contends that the supreme court in *Coburn* limited its duty to keep highways reasonably safe for travel to situations in which the motorist was following the rules of the road:

> The [state] has a duty to keep the streets reasonably safe; motorists have a duty to drive with reasonable care.
>
> . . . . .
>
> What is 'reasonably safe' takes into consideration certain minimal expectations that travelers follow the usual rules of the road.

143 Ariz. at 52, 54, 691 P.2d at 1080, 1082. The State misperceives the court's analysis. The above-quoted portions of the *Coburn* opinion arise in the court's discussion of

negligence, not duty. Thus, Bach's asserted failure to drive with reasonable care pertains to his contributory negligence, rather than the State's duty to provide a safe highway. Stated simply, a motorist's duty to drive with reasonable care does not define the state's duty to keep its roads reasonably safe for travel. The two must be separate inquiries. *See Markowitz v. Arizona Parks Bd.,* 146 Ariz. 260, 265–68, 705 P.2d 937, 942–45 (App.1984) (Meyerson, J., dissenting).

A recent decision of Division Two of this court demonstrates the inapplicability of *Coburn* to this case. In *Church of Jesus Christ of Latter Day Saints v. Superior Court,* 148 Ariz. 261, 714 P.2d 431 (App. 1985), the deceased rode his bike down a sloped driveway owned by one of the defendants into oncoming traffic. It was alleged that the city was negligent when it repaved the street by increasing the angle of the slope of the driveway. The court ruled that summary judgment should have been granted in favor of the city, relying on *Coburn.* The court reasoned that what is reasonably safe takes into account certain minimal expectations that travelers will follow the rules of the road and that the decedent failed to do so by not yielding the right-of-way. The court concluded that the city was not bound to provide "perfect streets" but only those which were reasonably safe. *Id.* at 263, 714 P.2d at 433. In short, the court ruled that as a matter of law the repaving done by the city was not negligent.

To the contrary, in the case before us, one of Bach's expert witnesses testified that the exposed culvert created a condition that was unreasonably dangerous for ordinary traffic. Even one of the State's own engineers testified that vehicle safety is considered in those areas beyond the paved portion of the road. The expert testimony recognized that vehicles can travel off of the roadway for a variety of reasons, including driver negligence. A traffic engineer testified that one of the significant considerations in highway safety and design is to protect the driver against mis-

takes or misjudgments. Because the duty which the State owes to Bach is based in part upon the possibility of driver error, it would be anamolous indeed if we held that this very same error required us to declare the State free from negligence.

For the above reasons, we reverse the directed verdict granted in the trial court and remand for a new trial.

CONTRERAS, P.J., and McFATE, J. * (Retired), concur.

* The Honorable Yale McFate was assigned by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this matter pursuant to A.R.S. §§ 12–145–47.