800 P.2d 46

The **HOME INDEMNITY COMPANY**, a New Jersey corporation, Plaintiff / Counterdefendant / Appellant / Cross–Appellee,

v.

**MEAD REINSURANCE CORPORATION**, an Illinois corporation; Integrity Insurance Company, a New Jersey corporation; and Maricopa County, a body politic, Defendants/Counterclaimants/Appellees/Cross–Appellants,

**INTEGRITY INSURANCE COMPANY**, a New Jersey corporation, Crossclaimant/Appellee,

v.

**MEAD REINSURANCE CORPORATION**, an Illinois corporation, Crossdefendant/Appellant.

No. 2 CA–CV 90–0102.

Court of Appeals of Arizona, Division 2, Department A.

Oct. 25, 1990.

Heron, Burchette, Ruckert & Rothwell by Michael E. Bradford and Colleen L. French, Phoenix, for plaintiff/counterdefendant/appellant/cross-appellee.

Gallagher & Kennedy, P.A. by W. Charles Thomson, III and Jeffrey T. Pyburn, Phoenix, for defendant/counterclaimant/appellee/cross-appellant and crossdefendant/appellant Mead Reinsurance Corp.

Fennemore Craig by Nancy L. Rowen and Diane M. Evans, Phoenix, for defendant/counterclaimant/appellee and crossclaimant/appellee Integrity Ins. Co.

Robbins & Green, P.A. by William H. Sandweg, III and Dwayne E. Ross, Phoenix, for defendant/appellee Maricopa County.

## OPINION

LACAGNINA, Judge.

The issue presented here is whether, in the absence of a trial to determine and settle facts and multiple theories of liability, an insurer who defends under a reservation of rights because some, but not all of the alleged claims were covered under the policy, can settle the claims against the insured and then seek indemnification from other carriers for the entire settlement amounts, alleging the settled claims were not covered by its policy. We hold it cannot do so, but it can require indemnity for a share of the settlement amounts.

The Home Indemnity Company (Home) insures Maricopa County for comprehensive general liability. Mead Reinsurance Corporation (Mead) insures the county and provides coverage only where the county does not have other applicable insurance coverage. Integrity Insurance Company (Integrity) is an excess carrier. Home's policy contains a professional services exclusion.[1] Mead's policy contains a condition that no coverage is provided if any insurance is provided by the Home policy.[2]

The county was sued in five cases in which four complaints allege negligence by the county in its design, maintenance and failure to remedy known hazardous conditions relating to its duty to maintain reasonably safe highways and roads and the fifth complaint alleges negligent approval of a swimming pool permit. Home defended each case with a reservation of rights. Home settled all five cases and brought this action for declaratory judgment against the county, Mead and Integrity claiming the cases it settled were based upon conduct covered by its professional services exclusion and, therefore, it was entitled to judgment of no coverage and for indemnity from Mead for the settlement amounts.

The trial court considered motions for summary judgment filed by all parties and ruled that based upon the allegations of the underlying cases against the county which were settled by Home, one case which did not allege engineering defects was entirely the responsibility of Home. In the other cases, where the allegations would support some claims of liability covered and some not covered by Home's professional servic-

1. The exclusion provides: "It is agreed that the insurance does not apply to bodily injury or property damage arising out of any professional services performed by or for the named insured, including: (1) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and (2) supervisory, inspection or engineering services."

2. The condition provides: "In consideration of the premium charged and as a condition to the issuance of this policy, it is agreed that the Insurance afforded by this policy shall not apply to the extent that any Insurance is provided by (1) GA 996534 of Home Insurance Indemnity Company [or] (2) BA 991024 of Home Insurance Indemnity Company or would have been provided by either or both of the foregoing policies if either or both were in effect at the time."

es exclusion, the trial court decided Mead was also a primary insurer and ordered Mead to indemnify Home for its share of the settlements.

Home appeals arguing it has no responsibility to pay any amounts because the claims against the county were excluded by its policy. Mead appeals arguing Home must bear the entire responsibility for payment of the settlements because (1) where there exists any coverage provided by Home, Mead's policy is not applicable, and (2) Home's defense and settlement of claims which were based on injuries and damages not divisible as between the various claims and theories of liability precludes it from later asserting no liability for indemnity of its insured and from seeking indemnification from other insurance carriers.

The parties have raised multiple issues to support their arguments that the judgment below is erroneous. The relief sought ranges from remanding the case for trial of disputed facts regarding the underlying cases settled by Home, to finding Home's exclusion ambiguous and unavailable to defeat its coverage. Other arguments focus on the interpretation of Mead's policy which covers the county's liability for negligence not covered by Home's policy, unless any coverage by Home's policy negates any coverage by Mead. We do not find it necessary to interpret the exclusions and conditions of each policy in order to dispose of this case. Our decision is based on the undisputed facts regarding the defense and settlement by Home and Integrity prior to a final determination by a trier of fact of the theories of liability under which the claimants in the underlying cases would have prevailed.

 The complaints in the underlying cases against the county all contained allegations of negligent design, negligent maintenance and failure to remedy known hazardous conditions. The county owes the duty to the public to maintain roads and keep them reasonably safe for travel. *Dunham v. Pima County*, 161 Ariz. 304, 778 P.2d 1200 (1989); *Coburn v. City of Tucson*, 143 Ariz. 50, 691 P.2d 1078 (1984);

*Bach v. State*, 152 Ariz. 145, 730 P.2d 854 (App.1986). Depending upon the final proof, the claimants could have recovered from the county by proving negligent maintenance, failure to warn, failure to correct a known dangerous condition and other general negligence theories. Home's position in this declaratory judgment action is that the only theory of recovery against the county was for professional services excluded by its policy. We are unable to determine on what claims or theories the underlying cases would have been decided had they been fully litigated. Home settled the cases before such a determination was made by a trier of fact. The settlements precluded any determination of the precise causes or theories of recovery against the county. Because the underlying cases allege risks which were covered by Home's policy and risks which may have been excluded, and because the damages were not divisible between the two, Home was required to defend and indemnify the county. *Scottsdale Ins. Co. v. Van Nguyen*, 158 Ariz. 476, 763 P.2d 540 (App.1988). However, a carrier may avoid being precluded from seeking indemnification from other carriers if it (1) brings a declaration action prior to settlement, or (2) allows the underlying lawsuit to proceed, so that the trier of fact may determine the bases of liability.

We adopt the reasoning and holding of the district court in *Pacific Indemnity Co. v. Linn*, 590 F.Supp. 643, 651 (1984), *aff'd*, 766 F.2d 754 (3d Cir.1985), a factually similar case in which one insurance carrier of many who owed a duty to defend settled the cases and sought a declaration of nonliability. The district court denied relief in *Linn* and held:

> Here, the various insurers were obligated to defend Dr. Linn because the underlying complaints stated causes of action on which there was potential liability. The court deferred deciding which insurers were obligated to indemnify Dr. Linn until the final disposition of each underlying case presented a factual basis for determining which insurers had indemnity obligations. However, because those

cases implicating the duty to indemnify were terminated by settlement rather than final judgment, it is now impossible to determine on what theories of liability, if any, the underlying plaintiffs would have prevailed. There are no factual findings to consider in determining which insurers are obligated to indemnify Dr. Linn. As a result, the duty to indemnify must follow the duty to defend.

590 F.Supp. at 650 (footnotes omitted). Each insurer with a duty to defend, therefore, had to contribute to the indemnification of the insured.

The third circuit, on review of the district court decision, stated:

The district court held that, in those bookreader suits that were settled, the duty to indemnify necessarily had to follow the duty to defend because settlement made it impossible to determine on what theories of liability, if any, the underlying claimants would have prevailed. * * *

This court has recognized that obligations to defend are wider than obligations to indemnify. *C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 481 (3d Cir.1981). From this, Pacific contends that the wider defense obligation cannot form the basis for the duty to indemnify. Although this is true in any case in which sufficient facts are established confining the claim to a recovery not within the scope of the policy, the settlements in the underlying suits here preclude such factual determinations. As the district court noted, the duty to defend carries with it the conditional obligation to indemnify until it becomes clear that there can be no recovery within the insuring clause. *See* app. at 472. To reach the opposite conclusion could result conceivably in an insured never being indemnified in a suit that its insurer settles where that insurer defends under a reservation of rights. In such a situation, it would behoove the insurer to reserve its rights and to settle the suit to avoid both the costs of litigation and, at the same time, the costs of indemnification. Such a strategy should not be countenanced.

We are persuaded that the approach adopted by the district court cannot be faulted because it is justified by both rational and pragmatic considerations.

766 F.2d at 766.

The trial court correctly concluded that as to some of the allegations of the complaint, Home and Mead were primarily liable and we affirm the trial court's judgment in favor of Home for indemnification from Mead for a share of the amounts paid by Home in settlement of the four cases against Maricopa County, including attorneys' fees and costs. We also affirm the trial court's judgment that Home was entirely responsible for the one case which did not allege engineering defects.

In addition, for the reasons stated above, the participation by Integrity as excess carrier in the settlements for the two cases that exceeded Home's policy limits entitle it to judgment against Mead. The judgment of the trial court in favor of Integrity and against Mead is affirmed.

■ Finally, we find the trial court properly granted Mead's motion for summary judgment on Home's bad faith claim and in denying Home its attorneys' fees. We agree with Mead that if a bad faith claim exists, it is owned by Maricopa County, and not Home. Home is not an equitable subrogee: by its payment of the claim on behalf of Maricopa County, it does not acquire any bad faith rights which Maricopa County may have against Mead.

■ Regarding the issue of attorneys' fees, the trial court ruled that Home and Mead were both primarily liable, that both were responsible for payment of settlement amounts up to their policy limits, and that Home was entitled to recover one-half of its attorneys' fees and costs incurred after March 13, 1986, but also found that Home had not incurred any fees after that date. The trial court correctly relied on *National Indemnity Co. v. St. Paul Ins. Co.*, 150 Ariz. 458, 724 P.2d 544 (1986), which held that one insurance company could compel another insurance company to contribute its share of the defense costs where both insurers had a duty to defend and one

company failed to provide a defense. The trial court correctly ruled that A.R.S. § 12–341.01 does not apply and that *National Indemnity* is controlling.

Affirmed. The parties' requests for attorneys' fees on appeal are denied.

LIVERMORE, P.J., and HATHAWAY, J., concur.